# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| RODNEY MACK BREWER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:11-cv-908-SEB-MJD |
| | ) | |
| PAUL J. O'BRIEN, Medical Doctor, | ) | |
| | ) | |
| Defendant. | ) | |

## Entry Discussing Motion for Summary Judgment

In this civil rights action brought pursuant to 42 U.S.C. § 1983, plaintiff Rodney Brewer alleges that defendant Dr. Paul O'Brien was deliberately indifferent to his serious medical needs when Brewer fractured his leg. Dr. O'Brien moves for summary judgment.

## Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). To survive summary judgment, the nonmoving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in his favor. *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). AThe nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion.@ *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699

(7th Cir. 2002) (internal quotation and citation omitted). *See Fed.R.Civ.P.* 56(c)(1)(A),B)(both the party Aasserting that a fact cannot be,@ and a party asserting that a fact is genuinely disputed, must support their assertions by Aciting to particular parts of materials in the record,@ or by Ashowing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.@).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir.1994). However, "before a non-movant can benefit from a favorable view of the evidence, it must show that there is some genuine evidentiary dispute." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).

Mr. Brewer has not opposed the motion for summary judgment with a Statement of Disputed Facts as required by Local Rule 56-1. He also has not supported the facts he alleges with admissible evidence. The consequence of this is that he has conceded the defendant's version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This is the result of Local Rule 56-1, of which the plaintiff was notified. This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## Undisputed Facts

On Friday, October 15, 2010, Mr. Brewer stepped down from a step and injured his lower right leg. He reported hearing a pop and that his right lower leg started to develop pain. Mr. Brewer submitted a Request for Healthcare on October 16, 2010, stating that he may have fractured his tibia. Mr. Brewer submitted another Request for Healthcare on October 17, 2010, stating that he felt like he fractured the tibia of his right leg. Mr. Brewer was examined by Nurse Nicole Taylor on October 17, 2010. Mr. Brewer reported that he hurt his foot/ankle while stepping down. Nurse Taylor took Mr. Brewer's vital signs and noted that his ankle was swollen and that he could not bear weight on it. She gave him an ACE wrap, crutches, and scheduled him for an x-ray. She noted that he was already on Naproxen. Mr. Brewer had an x-ray of his right foot on October 19, 2010 and the x-ray was negative for recent fracture or other significant bony abnormality. However, if symptoms persisted, a follow-up x-ray was recommended.

Mr. Brewer submitted a Request for Healthcare on October 20, 2010, stating that his ankle hurt and that it hurt above the place where the nurse took an x-ray. In response, medical staff informed Mr. Brewer that he was scheduled to see the doctor. Mr. Brewer submitted a Request for Healthcare on October 21, 2010, asking to switch his crutches for a cane. Medical staff responded to the request and informed Mr. Brewer that he was scheduled to see the doctor. Dr. Paul O'Brien examined Mr. Brewer on October 25, 2010. At that time, Mr. Brewer had no swelling or redness, but was unable to bear full weight on his foot. Dr. O'Brien prescribed a cane for one week. Dr. O'Brien renewed Mr. Brewer's cane pass for one week on October 26, 2010. Mr. Brewer submitted Requests for Healthcare on October 26, 2010 and October 28, 2010 that his right ankle hurt badly. Mr. Brewer was seen in nursing sick call on October 28, 2010 because he thought the bone was coming out of his leg. The nurse noted no bulging of the bone from any aspect of the ankle, that Mr. Brewer was walking without difficultly with a cane, and that there was no change in the ankle condition since Mr. Brewer saw the doctor. Mr. Brewer submitted a Request for Healthcare on October 30, 2010, and stated that he could walk without a cane, but that his ankle and leg were swollen. In response, the nurse spoke with Dr. O'Brien, who ordered a new pair of TED hose.

Mr. Brewer submitted two different Requests for Healthcare on November 2, 2010, and November 8, 2010, asking for a bottom bunk pass. Medical staff responded and informed Mr. Brewer that he already had a bottom bunk pass. Mr. Brewer was seen by a nurse on November 3, 2010, and the nurse referred him to the doctor. Mr. Brewer submitted three more Requests for Healthcare on November 8, 2010, and November 11, 2010, regarding pain in his ankle. Dr. O'Brien examined Mr. Brewer on November 12, 2010, and ordered a wheelchair. Mr. Brewer submitted two Requests for Healthcare on November 13 and 14, 2010, asking for pain medication. Those requests were forwarded to Dr. O'Brien. Mr. Brewer submitted three Requests for Healthcare on November 15, 2010, about pain medication and his cane. In response, medical staff told him that he was taking Pamelor and Naproxen, which were appropriate for his injury, and his cane pass was renewed for 30 days. On November 22, 2010, Mr. Brewer was seen in the Chronic Care Clinic by Jeff Coy, APN. Nurse Practitioner Coy noted edema of the right foot, with a 1.0 cm-ulceration to the medial aspect of his foot. Nurse Practitioner Coy prescribed foot soaks to the right foot and Cephalexin for infection.

Dr. O'Brien examined Mr. Brewer again on November 29, 2010. Because Mr. Brewer reported persistent symptoms in his right ankle, Dr. O'Brien decided to check for injury in places other than the right foot/ankle, so Dr. O'Brien ordered an x-ray of the right lower leg. Mr. Brewer had another x-ray, this time of the right lower leg, which showed a right distal tibia fracture. Dr. O'Brien ordered continued wheelchair use and pain medication, including Vicodin. He also referred Mr. Brewer for an orthopedic evaluation, which was scheduled at UAP Bone and Joint Clinic at Union Hospital. Mr. Brewer went to the UAP Bone and Joint Clinic at Union

Hospital on December 3, 2010, for an orthopedic evaluation. Mr. Brewer reported continued pain and that he had been completely non-weight-bearing in a wheelchair for the past two weeks. On exam, the orthopedist noted a small medial calcaneal wound that was healing and there was no sign of infection. An x-ray taken at the hospital showed good alignment of the fracture with early attempted callus formation. The orthopedist placed Mr. Brewer in a short-leg cast and recommended no weight-bearing and a follow-up in one month. The orthopedic specialist treated Mr. Brewer conservatively, with instructions for non-weight-bearing for 8-10 weeks and Vicodin for pain. When Mr. Brewer returned to the prison, Dr. O'Brien followed all of the recommendations from the orthopedic specialist.

On December 6, 2010, Dr. O'Brien ordered in-dorm meals, in-dorm medications, and a wheelchair for 90 days. Mr. Brewer's cane pass was also renewed for 90 days, per his request, on December 9, 2010. Dr. O'Brien examined Mr. Brewer on December 21, 2010, because Mr. Brewer's cast was loose and cracking. Dr. O'Brien reinforced the cast with fiberglass casting and scheduled an x-ray for January 3, 2011. He also prescribed Ecotrin for pain. Mr. Brewer had a follow-up orthopedic appointment at Union Hospital on December 27, 2010, but for reasons unknown, he did not show up for the appointment. Dr. O'Brien renewed Mr. Brewer's Vicodin on December 28, 2010.

Mr. Brewer was seen in nursing sick call on January 5, 2011. His vital signs were taken, he was scheduled for an x-ray, and he was referred to the doctor. On January 7, 2011, Mr. Brewer had another new x-ray of the right ankle, which showed that the distal tibia was healing and was unchanged in position or alignment. Jeff Coy, APN, examined Mr. Brewer on January 11, 2011. Mr. Brewer's capillary refill was normal and he had no complaints. He was told he would have his cast on for 8 more weeks. Nurse Practitioner Coy prescribed Naproxen for pain on January 17, 2011. Dr. O'Brien examined Mr. Brewer in the Chronic Care Clinic on January 28, 2011. Mr. Brewer had decreased liver enzymes, which Dr. O'Brien thought was probably from the Vicodin, so Dr. O'Brien discontinued Vicodin. He also noted that they would do another x-ray and if it looked good, he would remove Mr. Brewer's cast. Dr. O'Brien ordered an egg crate to elevate Mr. Brewer's leg on January 30, 2011. On February 4, 2011, Mr. Brewer received an ACE wrap and an ambulatory boot.

On February 5, 2011, Dr. O'Brien examined Mr. Brewer and noted that he had worn the cast for 8 weeks. Dr. O'Brien removed the cast and noted a nickel-sized ulcer on the medial ankle with some redness. Dr. O'Brien prescribed antibiotics and daily dressing changes. He also told Mr. Brewer to wear his boot and remain non-weight bearing. On February 11, 2011, Mr. Brewer had a new x-ray of the right tibia and fibula, which showed a healing fracture of the distal tibia, which healing had progressed from the prior film. On February 21, 2011, Dr. O'Brien examined Mr. Brewer again and noted that he was doing better and had good

healing of the foot. The ulcer on Mr. Brewer's ankle was down to 5 mm and Dr. O'Brien continued antibiotics. He also told Mr. Brewer to start range of motion exercises for the ankle and start weight-bearing in the dorm with a cane. Dr. O'Brien renewed Mr. Brewer's cane pass for 60 days on March 8, 2011. On March 13, 2011, Mr. Brewer was seen in nursing sick call and there was no evidence of infection in or around his foot ulcer. Mr. Brewer had another x-ray taken on March 30, 2011, which showed that the fracture was well healed.

Mr. Brewer recovered uneventfully from his leg fracture, except for several ulcers that developed under his cast, which were treated as they arose. Dr. O'Brien personally examined Mr. Brewer within 10 days of the initial injury. It was not medically necessary for Dr. O'Brien to examine Mr. Brewer prior to that time because Mr. Brewer was seen by the nursing staff, who rendered the appropriate medical treatment, and the initial x-ray was negative for any fracture.[1]

## Discussion

Brewer alleges that Dr. O'Brien was deliberately indifferent to his serious medical needs. Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. ***Farmer v. Brennan***, 511 U.S. 825, 834 (1994). To establish a medical claim that a prison official has violated the Eighth Amendment, a plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) deliberate indifference by the prison officials to that condition. ***Johnson v. Snyder***, 444 F.3d 579, 584 (7th Cir. 2006).

As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.@ ***King v. Kramer,*** 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation omitted). The defendants do not dispute that Brewer had an objectively serious medical condition.

As to the second element, A[t]o show deliberate indifference, the plaintiff must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it.@ ***Knight v. Wiseman***, 590 F.3d 458, 463 (7th Cir. 2009). "A medical professional's deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted

---

[1] Dr. O'Brien also asserts that if Mr. Brewer's fracture had been diagnosed on the first day possible, his course of treatment would not have changed. But it is undisputed that once Mr. Brewer's fracture was diagnosed, he was placed in a cast and given Vicodin for pain – treatments he had not received before his fracture was diagnosed. There court will therefore disregard Dr. O'Brien's assertion to the contrary.

professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *King,* 680 F.3d at 1018-1019 (internal quotation omitted). "Deliberate indifference is more than negligence and approaches intentional wrongdoing." *Johnson,* 444 F.3d at 585 (internal quotation omitted). "[D]eliberate indifference is essentially a criminal recklessness standard, that is, ignoring a known risk." *Id.* (internal quotation omitted). "Even gross negligence is below the standard needed to impose constitutional liability." *Id.* (internal quotation omitted).

A court examines the totality of an inmate's medical care when determining whether defendants have been deliberately indifferent to an inmate's serious medical needs. *Reed v. McBride,* 178 F.3d 849, 855 (7th Cir. 1999). Here, Mr. Brewer received an abundance of medical care for his leg injury. He was examined regularly. He obtained a cane and a wheelchair to assist his movement and ample pain medication. He was treated appropriately for sores that developed. While his injury was initially misdiagnosed, there is no evidence that this was the result of more than negligence on the part of those who were treating him. Negligence on the part of medical providers is not sufficient to support a claim of deliberate indifference. *See Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000) ("A doctor might be careless in not appreciating the need to investigate several possible explanations for a particular prisoner's symptoms, and this carelessness may constitute malpractice. But malpractice alone is not enough to meet the constitutional standard."); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("[A] medical professional's erroneous treatment decision can lead to deliberate indifference liability if the decision was made in the absence of professional judgment.") (citing *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998)). Further, when Mr. Brewer's pain and swelling persisted, Dr. O'Brien ordered a further x-ray, which was positive for a tibia fracture. Dr. O'Brien then referred Mr. Brewer for an orthopedic evaluation and followed all of the specialist's recommendations. While Mr. Brewer may have unfortunately been the victim of negligence on the part of his medical providers, Dr. O'Brien's actions did not rise to the level of deliberate indifference. Accordingly, Dr. O'Brien is entitled to summary judgment as to Mr. Brewer's claims.

## Conclusion

Dr. O'Brien's motion for summary judgment [40] is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 03/26/2013

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Electronically registered counsel

Rodney Mack Brewer
DOC #984455
New Castle Correctional Facility
1000 Van Nuys Road
P.O. Box A
New Castle, IN 47362